UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                      Case No. 04-80423
v.                                Hon. Gerald E. Rosen

EDWARD ROBINSON, JR.,

       Defendant.

_____/

OPINION AND ORDER DENYING
DEFENDANT'S MOTION TO REMAND TO STATE COURT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    November 8, 2005         

PRESENT:  Honorable Gerald E. Rosen
                   United States District Judge

## I. INTRODUCTION

Defendant Edward Robinson, Jr. is charged in a June 22, 2004 indictment with possession with intent to distribute more than five grams of crack cocaine; using, brandishing, and carrying a firearm during and in relation to a drug trafficking crime; and being a felon in possession of a firearm. These charges all arise from Defendant's alleged conduct on a single occasion in April of 2004. This same alleged conduct also triggered Defendant's prosecution in state court, but the state charges were dismissed without prejudice shortly after the local Wayne County prosecutor referred the case to the U.S. Attorney's Office for possible federal prosecution under the joint state/federal Project

Safe Neighborhoods ("PSN") initiative.

Through the present motion, Defendant seeks a "remand" of this case to state court so that he can pursue a plea bargain that, in his view, is likely to be more favorable than the terms of any plea offer that might be forthcoming in this federal proceeding. As grounds for this relief, Defendant maintains that his counsel in the state court proceeding provided constitutionally deficient representation by allegedly failing to investigate and pursue the possibility of a two-year plea offer under the PSN program. Defendant further contends that he clearly was prejudiced by this constitutionally deficient performance, as he faces an anticipated sentencing range of 262-327 months in this federal case in light of his probable status as a career offender under § 4B1.1 of the U.S. Sentencing Guidelines.

On November 18, 2004, the Court held a hearing on Defendant's motion. Having reviewed the parties' written submissions, and having considered the arguments of counsel at the November 18 hearing, the Court now is prepared to rule on Defendant's motion. This Opinion and Order sets forth the Court's rulings.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The charges in this case stem from an April 22, 2004 search of the residence of co-defendant Jacquelyn Hoyle at 2701 Chrysler, Apartment 1721 in Detroit, Michigan. Upon executing a warrant to search this residence, officers allegedly discovered Defendant Edward Robinson, Jr. sitting in front of a table covered with over 100 packages of crack cocaine. The first officer to enter the apartment, Detroit Police Officer Jerold Blanding, allegedly pointed his weapon at Defendant and yelled, "Let me see your

hands!" Despite this warning, Defendant allegedly reached into his waistband, pulled out

a loaded semiautomatic pistol, and pointed it at Officer Blanding. The officer responded

by shooting Defendant in the stomach.

As a result of this incident, Defendant was charged in a state court information

with (1) assault with intent to murder, (2) delivery or manufacture of less than 50 grams

of a controlled substance, (3) being a felon in possession of a firearm, and (4) possessing

a firearm during a felony. Defendant also was notified that he faced a habitual offender

charge, which triggered an increased maximum sentence of life imprisonment upon

conviction.

On May 6, 2004, Defendant appeared for a state court preliminary examination.

He was represented by attorney Lance Cooper at this proceeding. During the course of

the hearing, defense counsel Cooper acknowledged his awareness that the federal

prosecutor was contemplating charges against his client.[1] In Defendant's view, this

knowledge triggered his counsel's obligation to inform him about the PSN initiative, seek

a plea offer under this program, and advise him of his likely sentencing exposure in the

event that the federal authorities elected to pursue charges against him. Yet, Defendant's

state court counsel apparently took none of these steps at the May 6 hearing. At the

conclusion of this hearing, Defendant was bound over on the state charges and scheduled

---

[1]Although Defendant and the Government offer various assertions as to what transpired
during the May 6 preliminary examination, neither party has provided the Court with an actual
transcript of this proceeding. The parties seemingly agree, however, as to the general nature of
the events at this hearing.

for arraignment on May 13, 2004.

On or before May 12, 2004 — *i.e.,* before Defendant's state court arraignment —
the local Wayne County Prosecutor's Office referred Defendant's case to the U.S.
Attorney's Office for possible prosecution under the PSN initiative.  On May 12, 2004,
the case was accepted for federal prosecution, and Defendant was charged in a federal
complaint with weapons and narcotics offenses.

On May 13, 2004, Defendant was arraigned on the state charges before Judge
Hathaway of the Wayne County Circuit Court.  According to the Government, Defendant
was offered the opportunity to plead guilty to all of the pending state charges, which
would have exposed him to a sentencing range of 30 years to life imprisonment.[2]
Defendant elected not to plead guilty under these terms.  The Government states without
contradiction that no other plea offers were made by the state prosecutor.

The U.S. Attorney's Office continued forward with the federal charges against
Defendant, leading to the June 22, 2004 indictment in this case.  The state charges against
Defendant were dismissed without prejudice, however, at a May 28, 2004 final pretrial
conference.

## III.  ANALYSIS

---

[2]Again, the Court has not been provided with a transcript or record of the May 13, 2004
state court proceeding, but Defendant has not disputed the Government's characterization of the
events that transpired at his arraignment.

Defendant's motion requires the Court to revisit the nature and terms of the joint federal/state program known as "Project Safe Neighborhoods" ("PSN"), a topic recently addressed by this Court in United States v. Gray, 382 F. Supp.2d 898 (E.D. Mich. 2005). As described in this prior ruling, the PSN program is a crime reduction initiative developed by the U.S. Department of Justice, under which the U.S. Attorney's Office in Detroit consults with the local Wayne County Prosecutor's Office to determine the most appropriate jurisdiction in which to prosecute firearm-related offenses.  See Gray, 382 F. Supp.2d at 901.  If a particular defendant meets certain specified PSN criteria, he may be given an opportunity to plead guilty in state court to a state felony firearm offense in lieu of federal prosecution.

Through his present motion, Defendant maintains that the existence of the PSN initiative triggered a duty on the part of his state court attorney to explore the possibility of a plea offer under this program.  Had his state court counsel carried out this purported obligation, Defendant believes that he might well have been offered, and then accepted, a plea bargain more favorable than he is likely to receive from the federal prosecutor in this case.  In order to rectify this allegedly deficient performance by his state court attorney, Defendant suggests that this case should be "remanded" to state court for another opportunity to pursue a plea bargain in that assertedly more hospitable forum. Alternatively, Defendant seeks the outright dismissal of this case, in order to prevent the federal prosecutor from unfairly exploiting the allegedly ineffective representation provided by his state court counsel.

A.      **Defendant Has Failed to Identify Any Factual or Legal Basis for the Court to Assess the Performance of His State Court Counsel.**

The lynchpin of Defendant's present motion, and the sole ground he has identified

for his requested relief of "remand" to state court, is that his state court attorney's

performance deprived him of his Sixth Amendment right "to have the Assistance of

Counsel for his defence."  U.S. Const. amend. VI.  In particular, Defendant contends that

his state court counsel provided ineffective assistance by failing to pursue a plea offer

under the PSN initiative.  As discussed below, however, the Court finds that Defendant's

argument on this point is both factually and legally flawed.

As Defendant correctly observes, the Sixth Circuit has held that the familiar two-

pronged analytical framework of Strickland v. Washington, 466 U.S. 668, 104 S. Ct.

2052 (1984), applies as well to constitutional challenges to an attorney's performance

during the course of plea negotiations.  See Moss v. United States, 323 F.3d 445, 474

(6th Cir. 2003); Magana v. Hofbauer, 263 F.3d 542, 547 (6th Cir. 2001); Turner v.

Tennessee, 858 F.2d 1201, 1205-06 (6th Cir. 1988), vacated on other grounds, 492 U.S.

902, 109 S. Ct. 3208 (1989).  In order to satisfy this standard, Defendant must show both

(i) that his counsel provided "objectively deficient" assistance as measured against Sixth

Amendment standards, and (ii) that, but for this deficiency, "there is a reasonable

probability that he would have accepted a plea."  Moss, 323 F.3d at 474; see also

Magana, 263 F.3d at 547-48.

Yet, before this claim of ineffective assistance may be addressed on its merits,

Defendant first must identify some jurisdictional basis for this Court to evaluate the

performance of his state court counsel during the course of a separate state court criminal

proceeding.  The federal district courts, after all, are "courts of limited jurisdiction," and

"possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian

Life Ins. Co., 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  Even where, as here, a

claim rests upon a right guaranteed by the U.S. Constitution, the opportunities for review

of such claims are limited by various statutory provisions and jurisprudential doctrines,

see, e.g., Daniels v. United States, 532 U.S. 374, 381, 121 S. Ct. 1578, 1582-83 (2001),

and this is particularly true where a state forum is available to hear the claim, see Healy

v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 703 (1934).  As pointedly observed by the

Sixth Circuit, "[a] federal court is not a general repository of judicial power," but instead

"must satisfy itself that it has subject-matter jurisdiction over the dispute before it

addresses the merits of the claims."  Gross v. Hougland, 712 F.2d 1034, 1036 (6th Cir.

1983).  Unfortunately, Defendant utterly fails to address this threshold question in his

motion, and instead proceeds directly to the merits of his Sixth Amendment claim.

Thus left to its own devices, the Court is unable to identify any jurisdictional basis

for inquiring into the effectiveness of the assistance provided by Defendant's state court

counsel.  The most common vehicle for such an inquiry is the federal habeas statute,

which authorizes the federal district courts to entertain a claim by an individual "in

custody pursuant to the judgment of a State court" that his continued custody violates

"the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). This

statute plainly is unavailing here, however, as Defendant is not "in custody pursuant to

the judgment of a State court." To the contrary, the state charges against Defendant were

dismissed. Accordingly, the habeas statute does not authorize the consideration of

Defendant's Sixth Amendment challenge on the merits. See Steverson v. Summers, 258

F.3d 520, 523 (6th Cir. 2001) (finding no habeas jurisdiction where the "[p]etitioner,

though currently in federal custody, is not subject to any unexpired state sentences").

Nor does the Court view the PSN initiative as conferring a generalized power to

assess the performance of a federal defendant's state court counsel. Absent this

federal/state program, of course, each sovereign would be entirely free to decide for itself

whether to prosecute an alleged violation of its law, even if the federal and state charges

arose from the same underlying conduct, and even if the defendant already had been

convicted and sentenced in the other forum. See United States v. Louisville Edible Oil

Products, Inc., 926 F.2d 584, 587 (6th Cir. 1991); Gray, 382 F. Supp.2d at 901. The PSN

initiative restricts this sovereign independence only to the extent that state and federal

prosecutors coordinate their charging and plea bargaining decisions in a particular case,

promising that a plea in one jurisdiction will foreclose prosecution in the other. See, e.g.,

Finch v. Vaughn, 67 F.3d 909, 915 (11th Cir. 1995); United States v. Fuzer, 18 F.3d 517,

520 (7th Cir. 1994); Gray, 382 F. Supp.2d at 907-08. At most, then, the PSN program

serves as a mechanism under which federal and state prosecutors can agree, on a case-by-

case basis, to surrender a degree of their independence and bind themselves to a plea

offer that is the product of consultation and joint decision-making.

Any such potential cross-sovereign impact is unavailing to Defendant here, for a

number of reasons.  First, the Government states without contradiction that no PSN-based

plea offer was extended to Defendant in the state court proceedings, much less one in

which the federal authorities might have cooperated.  Nor was the state prosecutor

compelled to make such an offer, or even to engage in any sort of plea bargaining

whatsoever.  See Weatherford v. Bursey, 429 U.S. 545, 561, 97 S. Ct. 837, 846 (1977)

(observing that "there is no constitutional right to plea bargain"); United States v.

Sammons, 918 F.2d 592, 601 (6th Cir. 1990).  Thus, even assuming that a coordinated

PSN-based plea bargaining process might permit this Court to look beyond the four

corners of this federal case and examine the performance of Defendant's state court

counsel, the factual predicate for such an exercise of authority is absent here.[3]

---

[3]This absence of any sort of coordinated plea bargaining process serves to distinguish this
case from United States v. Nixon, 315 F. Supp.2d 876, 878 (E.D. Mich. 2004) (Feikens, J.),
*amended on reconsideration,* 318 F. Supp.2d 525 (E.D. Mich. 2004), and United States v.
Morris, 377 F. Supp.2d 630, 633-34 (E.D. Mich. 2005) (Tarnow, J.), in which two Judges of this
District found that federal/state cooperation in a PSN-based plea bargaining process permitted a
federal court to scrutinize the performance of a defendant's state court counsel.

Beyond this factual distinction, this Court again notes, as it did in Gray, 382 F. Supp.2d
at 908 n.4, that none of the cases cited in Nixon provides "any support for a federal court to
examine the conduct of counsel in a state court proceeding that was dismissed before trial
without the entry of judgment or the imposition of any sentence."  As for Morris, it cites no
authority whatsoever for its conclusion that the "cooperative relationship" reflected in the PSN
initiative, standing alone, confers a broad federal court power to "remedy any constitutional
errors" that might have occurred in either the state or federal proceedings.  Morris, 377 F.
Supp.2d at 634.  Consequently, neither Nixon nor Morris provides much assistance in this

Moreover, whatever plea offers were or should have been forthcoming in the state court proceedings, it is clear that no such offer was ever accepted by Defendant, much less embodied in a state court judgment.  See Mabry v. Johnson, 467 U.S. 504, 507, 104 S. Ct. 2543, 2546 (1984) ("A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest."); Gray, 382 F. Supp. 2d at 908 (finding that the defendant's PSN-based challenges in that case were defeated in part by his rejection of the state prosecutor's plea offer).  Instead, the state court proceedings were terminated with the dismissal of all charges.  It is difficult to see how this favorable disposition could have abridged Defendant's federal constitutional rights.  And, even if so, this simply returns the Court to the threshold jurisdictional question whether this is the proper forum in which to address such a claim.[4]

Irrespective, then, of the possible jurisdiction-conferring effect of the PSN initiative in a proper case involving coordinated federal/state plea bargaining, this simply is not such a case.  Defendant's effort to supply this missing factual predicate is rife with

---

Court's effort to identify a jurisdictional basis for addressing the Sixth Amendment claim advanced by Defendant here.

[4]Defendant presumably was (and perhaps still is) free to pursue a state court challenge to the dismissal of the state charges.  This Court, of course, expresses no view as to the availability of a state court remedy, the wisdom of such a course of action, or the likelihood that a "successful" reinstatement of the state charges might lead the federal prosecutor to abandon the charges brought in this case.

unfounded speculation.  He suggests, in particular, that *if* his state court counsel had

pursued a plea offer under the PSN initiative, the state prosecutor ***would have*** responded

with such an offer, and the federal prosecutor, in turn, ***would have*** elected not to pursue

the charges brought in this case.  Yet, the record is devoid of any evidence that a PSN-

based offer would have been forthcoming.  To the contrary, the Government states

without contradiction that Defendant was not eligible for such an offer, and the limited

record tends to support the Government's contention on this point — as a matter of brute

fact, the state prosecutor made no such offer.  Instead, Defendant was offered only the

opportunity to plead guilty to all of the pending state charges, which evidently would

have exposed him to a sentencing range of 30 years to life imprisonment.  Under these

circumstances, where the state and federal authorities independently exercised their

respective prosecutorial prerogatives, the PSN initiative provides no vehicle for this

Court to assess the performance of Defendant's state court counsel.

Even if the Court were authorized to undertake this inquiry, the very same record

(or lack thereof) would defeat Defendant's Sixth Amendment claim on the merits.  As

noted earlier, Defendant's claim of ineffective assistance of counsel consists of two

elements:  (i) that his state court counsel provided "objectively deficient" assistance as

measured against Sixth Amendment standards, and (ii) that, but for this deficiency, "there

is a reasonable probability that he would have accepted a plea."  Moss, 323 F.3d at 474.

The purported deficiency identified by Defendant is that his state court counsel failed to

11

pursue a plea offer under the PSN initiative. As explained, however, there is no

indication in the record that such an effort would have succeeded. Nor is there any

evidence that, if Defendant's state court counsel had been able to secure a plea offer more

favorable than the one actually extended, the federal authorities would have acquiesced in

this offer and elected to forgo prosecution in this Court.

Finally, Defendant faults his state court counsel for purportedly failing to advise

him that he faced "more onerous sentencing consequences in federal court."

(Defendant's Motion at ¶ 6.) Yet, the record indicates that his sentencing exposure in this

case — estimated at 262-327 months in his motion — leaves him in a ***better*** position than

if he had accepted the lone plea bargain that ***actually*** was offered by the state prosecutor

— an offer that apparently would have exposed him to a sentencing range of 30 years to

life imprisonment. Under these circumstances, the Court cannot say that Defendant's

state court counsel provided objectively deficient assistance, whether by failing to pursue

a plea offer that Defendant apparently had no prospect of obtaining, or by failing to

advise Defendant to accept a "straight-up" plea offer that likely would have resulted in a

more severe sentence than Defendant evidently faces in this Court.

**B.     Defendant Has Failed to Identify any Basis for This Court to "Remand" or
          Dismiss This Case in Favor of Prosecution in State Court.**

As the remedy for his state court counsel's purportedly deficient representation,

Defendant contends that this case should be "remanded" to the state court for resolution

in that forum. Alternatively, Defendant suggests that this case should be dismissed, so

that the federal prosecutor does not unfairly profit from the deficient performance of his

state court counsel.  Having found that Defendant's Sixth Amendment challenge lies

outside the purview of this Court, and that this claim also fails on the merits, the Court

readily concludes that neither of Defendant's requested remedies is warranted.

First, the Government correctly observes that this Court lacks the authority to

"remand" this matter to the state court.  This Court's reasoning on this point in Gray

applies with equal force here:

> This case, in which Defendant is charged with violating a federal statute,
> lies squarely within the original federal court jurisdiction conferred under
> 18 U.S.C. § 3231.  It is entirely separate and distinct, therefore, from any
> state court proceeding arising from Defendant's alleged violation of state
> law.  *See United States v. Louisville Edible Oil Products, Inc.,* 926 F.2d
> 584, 587 (6th Cir. 1991) (explaining that the "dual sovereignty" doctrine
> recognizes the power of state and federal authorities to bring separate
> criminal suits against a defendant arising out of the same underlying
> conduct).  This Court is powerless, therefore, to order a "remand" of this
> distinctly federal case to state court.

Gray, 382 F. Supp.2d at 901 (footnote omitted).[5]

Neither has Defendant suggested any ground for the dismissal of this case.

Certainly, the federal authorities have done nothing to forfeit their power to prosecute an

alleged violation of federal law.  As observed earlier, there is no evidence that the federal

prosecutor participated in any plea bargaining process in the state court proceedings,

---

[5]Even assuming the existence of such authority, Gray explains that "well-established
principles of federalism, comity, and dual sovereignty would prevent this Court from ordering
that the state court proceed in any particular fashion upon the 'remand' of a criminal case that
lies within that court's exclusive jurisdiction."  382 F. Supp.2d at 901 n.2 (citation omitted).

whether pursuant to the PSN initiative or otherwise.  Nor, as explained in <u>Gray</u>, would

Defendant's due process rights be violated by a federal prosecution following his

rejection of the state prosecutor's plea offer, even if the case was explicitly referred for

possible federal prosecution by the state authorities, and even if there were interactions

between the state and federal authorities as they decided whether to pursue charges under

their respective laws.  <u>See</u> <u>Gray</u>, 382 F. Supp.2d at 902-07.  Finally, the Court already has

explained that the Sixth Amendment right to counsel provides no vehicle here for

reopening the state court plea bargaining process, where such a remedy is beyond the

authority of this Court to confer under the circumstances, and where Defendant has failed

to identify any constitutional infirmity in the performance of his state court counsel.

Consequently, the Court finds no basis to refrain from exercising its unquestioned

jurisdiction over this case, in which Defendant is lawfully charged with three violations

of federal law.  As this Court previously noted, "there is no indication that the PSN

initiative was intended to operate for the benefit of criminal defendants."  <u>Gray</u>, 382 F.

Supp. 2d at 911.  It follows, in this case, that Defendant's rights were not violated

through his failure to secure a PSN-based plea offer in the state court proceedings, where

the state prosecutor never extended such an offer, and where there is no evidence that

Defendant would have been eligible for a plea offer under the PSN program.  Idle

speculation is no substitute for supplying a factual and legal basis for the dismissal of a

federal indictment.

## IV.  **CONCLUSION**

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's Motion to

Remand is DENIED.


                                        s/Gerald E. Rosen
                                        Gerald E. Rosen
                                        United States District Judge

Dated:  November 8, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on November 8, 2005, by electronic and/or ordinary mail.

                                        s/LaShawn R. Saulsberry
                                        Case Manager